SALVATOR V. FAZIO, JR. and JOVITA FAZIO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fazio v. Commissioner
Docket No. 10384-79.
United States Tax Court
T.C. Memo 1982-177; 1982 Tax Ct. Memo LEXIS 568; 43 T.C.M. (CCH) 1006; T.C.M. (RIA) 82177; April 7, 1982. Salvator V. Fazio, Jr., pro se. Robert F. Geraghty, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined deficiencies in petitioners' Federal income tax and additions to tax pursuant to section 6653(a) [1] and section 6653(b) as follows: Additions to tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653(b)
1971
$ 9,251.92
$ 4,625.96
1972
5,490.17
2,745.09
1973
1.632.77
$ 81.64
The *569 issues for decision are: (1) whether Salvator V. Fazio, Jr. (hereinafter referred to as Salvator), earned income from sales activities during the years 1971 through 1973 in the respective amounts of $ 40,577, $ 20,727.50, and $ 7,713, which petitioners failed to report; (2) whether petitioners are entitled to a cost of goods sold reduction from unreported sales receipts during their taxable years 1971 through 1973; (3) whether any parts of petitioners' underpayments of tax for 1971 and 1972 are due to Salvator's fraud with the intent to evade tax; (4) whether petitioners' underpayment of tax for 1973 is due to negligence or intentional disregard of the rules and regulations; and (5) whether respondent correctly disallowed certain medical, sales tax and interest deductions claimed by petitioners for their taxable years here in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided in Pleasant Hill, California, at the time the petition herein was filed. They timely filed joint Federal income tax returns for the years 1971 through 1973 with the Internal Revenue Service Center in Fresno, California. During *570 the years in issue, Salvator was employed as a truck driver. The only income reported on petitioners' returns for those years was Salvator's wages from that employment. Additionally, Salvator was in the business of selling merchandise, predominately photographic equipment, including cameras, lenses, film and flash globes. Intermittently, he also sold tiffany-type lamps, onyx chess boards, and stereo equipment which he acquired in Mexico. He has stipulated that his unreported sales receipts for the years 1971 and 1972 totaled $ 40,577 and $ 20,727.50, respectively, and has never disputed respondent's determined amount of $ 7,713 in unreported sales for 1973. Salvator's sales activities, while active, were not what one would ordinarily consider to be regular and systematic. Periodically, he would receive a telephone call from a friend, Manuel Galindez (hereinafter Galindez), at the San Jose flea market.Salvator would be informed of photographic equipment (usually 10 to 15 cases of film and flash globes) for sale. He immediately telephoned various retail dealers of such equipment and, if a buyer was found, he would drive to San Jose, buy the equipment, and deliver it to the retail *571 dealer all in the same day. Ninety percent of his sales were of merchandise purchased from Galindez. For such purposes, Salvator always kept $ 10,000 to $ 12,000 cash on hand, $ 3,000 of which was on his person and the rest at his home. Furthermore, he always insisted that the purchasers of merchandise pay him in cash, or checks made payable to cash. The remainder of Salvator's sales activities usually involved the resale of merchandise acquired by him while visiting his in-laws in Mexico. On each of his four or more visits to Mexico per year he would "buy a bunch of this stuff" (lamps, chess boards, stereo equipment, etc.), load his station wagon and bring the merchandise into the United States. Once or twice a month he then went to local California flea markets to sell and trade his wares. Petitioners have no records, receipts or other documentation which would identify where Salvator acquired the merchandise he sold during the years in issue or the amount he paid for it. Salvator was indicted by the United States Grand Jury for the Northern District of California on February 1, 1978, on two counts of violating section 7206(1) (willful failure to file a correct tax *572 return) with respect to petitioners' 1971 and 1972 tax years. Salvator pleaded guilty to count one relating to taxable year 1971. Count two, relative to petitioners' 1972 tax return, was dismissed. OPINION Petitioners have stipulated that they received the additional gross receipts determined by respondent for 1971 and 1972, and they have not contested the receipts determined by respondent for 1973. Their sole defense is that respondent has failed to reduce these amounts by any costs of goods sold. Respondent maintains petitioners had no offsetting costs and that Salvator was selling stolen or otherwise illegally obtained property. Respondent further asserts that petitioners' failure to report his extensive sales revenues during 1971 and 1972 was due to fraud with intent to evade tax, and that their failure to report same in 1973 was due to negligence or intentional disregard of the rules and regulations. As to the amount of the underpayments of tax, petitioners bear the burden of proving those facts necessary to support the theory upon which they rely. ; Rule 142(a). [2] Petitioners' only argument regarding the amounts *573 of the underpayments is that they had sufficient costs of goods sold to offset all of their gross sales receipts. Although petitioners failed to establish by documentary evidence any of such costs, they did present witnesses who observed Salvator receive goods and pay money therefor. Additionally, two of respondent's witnesses, Galindez and his son, testified that from 1971 through 1973 Salvator paid them roughly between $ 3,000 and $ 4,000 for the type of goods here in issue. This evidence leads this Court to believe that petitioners did pay something for the products Salvator sold. This Court may allow deductions to certain taxpayers who establish that they have incurred deductible expenses, notwithstanding that there is no proof of the exact amount allowable. ; . See also . In our best judgment we believe that petitioners' costs for merchandise *574 purchased could not reasonably have been less than 12-1/2 percent of their gross sales receipts; consequently, we allow them costs of goods sold for each of the years in issue in an amount equal to 12-1/2 percent of their gross sales receipts. We turn now to the question of whether petitioners' underpayments for 1971 and 1972 are due to fraud with intent to evade tax pursuant to section 6653(b). The burden of proving fraud is on respondent. Sec. 7454(a); Rule 142(b).To that end respondent must show specific intent to evade tax by clear and convincing evidence. , affd. without published opinion ; . This respondent has done for both 1971 and 1972. The primary indications of fraud on the part of petitioners are: (1) Salvator signed and filed returns for 1971 and 1972 with full knowledge that he omitted all receipts from his selling activities; (2) Salvator told his accountant who prepared his returns that he had only about $ 1,000 in such receipts and costs equal or exceeding that amount; (3) Salvator insisted that his *575 customers pay him only in cash or checks made payable to cash; (4) Salvator failed to keep any records of his extensive sales activities; and (5) Salvator's repeated refusal to cooperate with the Internal Revenue Service regarding the unreported sales. Additionally, Salvator pleaded guilty to willfully subscribing to a false joint income tax return for their 1971 taxable year in violation of section 7206(1). See : . From these facts, it is clear that respondent's burden to prove fraud has been satisfied. Finally, with regard to the disputed deductions claimed by petitioners in 1973 for medical, sales tax and interest expenses, no evidence whatsoever has been presented. Additionally, petitioners have produced no evidence and made no arguments tending to refute respondent's determination that they are liable for an addition to tax pursuant to section 6653(a) for intentional disregard of the rules and regulations. Because petitioners bear the burden of proof as to each of these matters, respondent's determination must be sustained. Rule 142(a). To reflect *576 the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Unless otherwise indicated, all references to the "Rules" shall refer to the Tax Court Rules of Practice and Procedure.↩